**UNITED STATES of America,**
**Appellee,**

**v.**

**Joseph Elmer HAMMOND, a/k/a Joe**
**Hammond, Appellant.**

**No. 13098.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 3, 1969.

Decided Dec. 19, 1969.

Roland Walker, Baltimore, Md. (Court-appointed counsel) Millard S. Rubenstein, Baltimore, Md., on brief for appellant.

Nevett Steele, Jr., Asst. U. S. Atty. (Stephen H. Sachs, U. S. Atty., on brief), for appellee.

Before BOREMAN, BRYAN and BUTZNER, Circuit Judges.

BOREMAN, Circuit Judge:

Joseph Elmer Hammond appeals from his conviction by a jury on a charge of criminal contempt and the resulting sentence of imprisonment. Hammond was indicted on May 21, 1968, and charged with bank robbery. The Government had attempted to have Hammond appear in a lineup, with his counsel present, on April 30 and May 9, 1968, but Hammond had refused. On June 13 the district judge signed an order requiring Hammond to participate in any lineups scheduled by the Government at reasonable times and places and "to wear any clothing or items, such as a false goatee; to speak any words; to walk in any manner; or to take any physical stance that may be required" to aid the witnesses in comparing him with persons who participated in the bank robberies. Hammond and his counsel, while appearing at an arraignment proceeding on June 19, 1968, were advised by the Government that on June 25, pursuant to the district judge's June 13 order, there would be an identification proceeding.

On the morning of specified date, June 25, 1968, FBI Special Agent Kennedy and two United States marshals went to the Baltimore City jail to present the order to Hammond. Soon after entering the jail they met Hammond in the corridor when he was on his way to another part of the building to meet with an associate of his trial attorney. A correctional officer at the jail testified that when Hammond saw the federal officers, he said, " * * * I don't want to * * * don't want to hear nothing from you, don't want to talk to you, won't listen to it. * * * " One of the marshals testified that Hammond said, " * * * I ain't going anywhere and I ain't going in lineups." Agent Kennedy testified that Hammond indicated " * * * that he wanted nothing to do with us, he did not want to see us. His entire conversation was a rejection of us and this Order."

One of the deputy marshals then began to read the order to Hammond who turned and walked away. The officer testified that he followed Hammond for a short distance, completed reading the order aloud, and then attempted to hand it to him but Hammond refused to accept it and the order fell to the floor. Agent Kennedy then asked Hammond if this meant that he was not going to appear in the lineup, but Hammond did not reply. The officers also testified that Hammond several times mentioned the words "lawyer" or "attorney," and the correctional officer testified that Hammond remarked to him, "I thought you got me out for an attorney visit."

Hammond stated that he was on his way to visit his attorney when he encountered the officers in the passageway and that he continued on his way when the officers tried to read and present the order to him. But, Hammond alleges that he did not actually

refuse to appear in a lineup at this time and that, upon being advised shortly thereafter by his principal attorney's associate, Shapiro, he then was willing to appear in a lineup but the federal officers had departed. However, Shapiro testified that he could not recall the purpose of his visit with Hammond on that date, that he probably saw other prisoners while at the jail that morning, that he could not recall whether he had advised Hammond about appearing in a lineup, that he could not remember if Hammond told him that he was willing to appear in a lineup, that he could not remember whether he was even aware of the district judge's order of June 13 when he spoke to Hammond, and that at no time thereafter did he notify the Government that Hammond was willing to appear in a lineup.

On appeal, Hammond contends that the order requiring him to appear in a lineup wearing a goatee violated his constitutional rights in that he would be denied due process of law and his privilege against self-incrimination; that the order was thus invalid and incapable of supporting his conviction for criminal contempt. We find this contention to be without merit.

■ At the bar of this court Hammond's attorney, while expressly stating that he did not have authority to abandon the validity issue, did not orally argue that the order itself was invalid and "more or less" conceded that the order was lawful. There is ample authority for the proposition that if a court has jurisdiction, disobedience of an order of that court subjects one to penalties for criminal contempt, even though the order may subsequently be found to have been invalid. United States v. United Mine Workers, 330 U.S. 258, 294, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Howat v. Kansas, 258 U.S. 181, 189–190, 42 S.Ct. 277, 66 L.Ed. 550 (1922); Dunn v. United States, 388 F.2d 511, 513 (10 Cir. 1968); Cliett v. Hammonds, 305 F.2d 565, 570 (5 Cir. 1962). Irrespective of the validity of the order, Hammond could properly be found guilty of criminal contempt upon his refusal to obey it.

■ In any event, Hammond's challenge to the validity of the order must fail. The proposed lineup in which Hammond was ordered to appear and to wear a false goatee would have been similar to the lineup conducted in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967), where the defendant and the other participants in the lineup were required to wear strips of tape on their faces and to repeat words which had been used by a bank robber. In *Wade* the Court found no violation of due process or the privilege against self-incrimination in the lineup procedure.

If Hammond fearfully anticipated a violation of his constitutional rights by participating in the lineup as commanded he could have obeyed the order and later challenged the admissibility of identification evidence so obtained by a pre-trial motion to suppress or by objecting to its admission at his trial.

■ Hammond challenges the sufficiency of the evidence, claiming that he did not refuse to appear in a lineup on the morning of June 25, 1968, and that when asked to do so he merely asked to see his attorney. The evidence on this point was conflicting but the jury resolved the conflicts in favor of the Government and against the defendant. The evidence to support the conviction is sufficient when tested by the applicable rule "that ' * * * there is substantial evidence, which, taken in the light most favorable to the United States, tends to show that the defendant is guilty beyond a reasonable doubt.' " United States v. Frazier, 394 F.2d 258, 262 (4 Cir. 1968), cert. denied, 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968); United States v. Quarles, 387 F.2d 551, 554 (4 Cir. 1967), cert. denied, 391 U.S. 922, 88 S.Ct. 1815, 20 L.Ed.2d 659 (1968). See also Bell v. United States, 185 F.2d 302, 310 (4 Cir. 1950).

Affirmed.