**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Claude JACKSON, Defendant-Appellant.**

**No. 72–1572.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1973.

Decided March 13, 1973.

---

SPRECHER, Circuit Judge.

The principal issue raised by this appeal is whether a prosecutor may comment on a marked change in the defendant's physical appearance shortly prior to his prospective identification by eyewitnesses.

Defendant Claude Jackson was convicted after a jury trial of transporting in interstate commerce a person who had been kidnapped and held as a hostage in violation of 18 U.S.C. § 1201. He was sentenced to five years, to become eligible for parole at such time as the Board of Parole may determine.

In the evening of April 15, 1971, two persons entered the lobby of the Albert Pick Motel in Rockford, Illinois, herded several employees into the office, and at gunpoint took several thousand dollars from the motel safe. They drove their automobile a short distance and abandoned it. After running around a parking lot trying to get into another car, they encountered John G. Hooley, an insurance underwriter, on his way from his home to his office to complete his income tax return. They forced Hooley at gunpoint to drive them to Madison, Wisconsin, where they pushed him out of his automobile. The two persons then drove off in Hooley's car.

Defendant was arrested in Atlanta, Georgia, on September 17, 1971, and after a removal hearing was returned to the Western District of Wisconsin on October 26, 1971.

I

■ Defendant contended that the trial court erred in receiving plaintiff's exhibit 18, a blow-up of two fingerprints —one of the defendant and the other taken from Hooley's brief case, which, stuffed with his income tax data, was lying in the back seat of his car when the person identified by him as the defendant climbed in the back seat in Rockford and nervously fingered the case during the trip to Madison.

The foundation laid by the prosecution for the introduction of the exhibit

Frederick H. Miller, Madison, Wis., for defendant-appellant.

John O. Olson, U. S. Atty., James M. Bablitch, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before PELL, STEVENS and SPRECHER, Circuit Judges.

was extensive. First, Charles O. Eastman, a deputy United States Marshal, testified that he took defendant's fingerprints on October 26, 1971, when defendant arrived back in Wisconsin. He identified plaintiff's exhibit 15 as the fingerprint card containing a full set of defendant's fingerprints.

Second, Dexter Haney, an employee of the Wisconsin State Crime Laboratory, testified that on December 17, 1971, he photographed a single fingerprint from exhibit 15, enlarged the photograph and mounted it on a large card, which he delivered to Daniel Dowd, director of the State Crime Laboratory.

Third, Daniel Dowd testified that at about 1:30 in the early morning of April 16, 1971, the Hooley automobile was delivered to him by the Madison Police Department. The automobile was sealed and locked in the Crime Laboratory garage, where later in the morning Dowd removed from the rear seat Hooley's brief case or attaché case and dusted it for fingerprints. Dowd testified that he "developed rigid detail" of latent fingerprints on the lock of the case. He then called in Kenneth Sundberg, photographer and analyst for the Crime Laboratory, to photograph the fingerprint found on the lock.

Fourth, Kenneth Sundberg testified that on April 16, 1971, he photographed the latent print on the latch of the case and then enlarged the photograph. The enlargement was delivered to Daniel Dowd.

Finally, Dowd testified that he received the fingerprint card (exhibit 15) from Marshal Eastman. He compared the rigid detail developed from the attaché case with the inked impressions on the fingerprint card. He then requested Haney to photograph and enlarge the right middle fingerprint of defendant, which Haney did and delivered to him. He requested Sundberg to photograph and enlarge the attaché case fingerprint, which Sundberg did and delivered to him. Dowd testified that he taped and marked to two enlargements as they appeared

on exhibit 18. He also testified that the work of Haney and Sundberg was done under his supervision and control; that the photograph from the case was taken in his presence; and before the jury he identified the enlarged fingerprint of defendant as being the same as the right middle finger of defendant from the fingerprint card (exhibit 15).

Dowd then testified that there were fifteen points of identification between defendant's right middle finger and the fingerprint taken from Hooley's case. He concluded that "the rigid detail appearing on the photograph taken from the attaché case and the inked fingerprint impression appearing on the fingerprint card, Exhibit 15, were made by the same finger."

We conclude that the government laid a complete foundation for the introduction of plaintiff's exhibit 18 and for Dowd's opinion. Dowd, of course, was also qualified as a fingerprint expert.

## II

■ Defendant was indicted on May 25, 1971. On March 15, 1972, defendant's attorney moved for the entry of an order compelling the prosecution to conduct a pre-trial lineup identification of the defendant by witnesses whom the government intended to call at the trial. In the alternative, defendant requested that he be allowed to sit in the courtroom at the trial among several individuals of "similar complexion and build." The trial judge ordered that the Dane County Sheriff's Department in conjunction with the Federal Marshal's Office conduct a lineup identification by all government witnesses. That lineup took place outside of court shortly after the trial commenced.

Some government witnesses in statements prior to, and in testimony at, the trial, identified the supposed criminal as having an Afro haircut and a mustache but no beard. Prior to the lineup and trial, the defendant had cropped his hair short, shaved off his mustache and sideburns, and had grown a goatee.

Defendant's counsel located as many persons fitting the prior description of the defendant as he could find on the street and offered to pay them to appear in the lineup. The lineup consisted of eight black males including defendant.

Defendant was six feet tall and weighed 150 pounds. The other seven persons were all from five feet eight inches to six feet tall and weighed from 147 to 175 pounds. Six of them (not including defendant) had mustaches. Four (not including defendant) had Afro haircuts and sideburns longer than defendant then wore. Despite all of this, the kidnap victim, John G. Hooley, and one of the two female clerks who were working at the motel desk in Rockford when the robbery occurred, identified defendant out of the defendant's carefully manufactured lineup.

In view of the positive fingerprint identification linking the defendant to the kidnapping, the result of the lineup identification is not significant in itself. However, defendant complained that the prosecutor's following comments to the jury in his opening statement violated defendant's privilege against self-incrimination contrary to the Fifth Amendment:

"[W]e will show the extremely difficult and adverse conditions in which that line-up was taken because it wasn't mine—it was Mr. Miller's [defendant's counsel] line-up * * * * [W]e intend to prove to you and I think the court will give us the opportunity to prove that the defendant, between the time this line-up was discussed and the time that the line-up was held, took an Afro haircut off, took off a mustache, and between the time he was booked until now, wore a goatee."

The government also called as witnesses an employee of the Dane County Sheriff's Office who testified that defendant changed his appearance just before the trial, and the trustee barber who cut his hair and shaved him prior to the trial.

The district judge, in his opinion denying defendant's motions for a judgment, of acquittal and for a new trial, said that in a pre-trial conference "I stated that my intention was to advise the jury myself that the defendant had altered his appearance radically just prior to the trial and just prior to the line-up." When the prosecutor mentioned the subject in his opening statement, however,

"I became persuaded that there was no practical way to bottle up the subject thereafter, even had it appeared best that it be bottled up; and that there was no feasible compromise procedure between the alternative of prohibiting any further references to the matter, on the one hand, or permitting complete freedom of action on the matter, on the other. Accordingly, the latter alternative was chosen and counsel were advised that both the plaintiff and defendant were free thereafter to go into the matter of the defendant's alteration of his appearance."

The trial judge, comparing the comments on the change of appearance with the introduction of evidence of flight, said:

"I conclude that this was not unfair. . . . [A]n innocent man is quite free to decide to fly, and to fly to South America the morning after a murder, but a jury is free to consider the decision to fly and the flight as some evidence of guilt. Similarly, an innocent man is free to change his appearance at any time, but a decision to change it and an actual alteration made a few days before the opening of the trial and a line-up may be considered as some evidence of guilt."

We agree with the district judge under the circumstances of this case.

At common law no one accused of crime could be compelled to testify against himself nor was he permitted to testify in his own behalf. In 1878, Congress enacted what is presently 18 U.S.C. § 3481, permitting the defendant in a criminal action to appear as a witness

in his own behalf at his own request but providing that "[h]is failure to make such request shall not create any presumption against him." In Wilson v. United States, 149 U.S. 60, 65, 13 S.Ct. 765, 766, 37 L.Ed. 650 (1893), the Supreme Court interpreted the statute to require that in order "[t]o prevent such presumption being created, comment, especially hostile comment, upon such failure must necessarily be excluded from the jury." The statute was further interpreted in Bruno v. United States, 308 U.S. 287, 292–293, 60 S.Ct. 198, 84 L.Ed. 257 (1939), to conclude that a defendant in a federal court is entitled as a matter of right upon his own request to have the jury instructed that he need not testify and that no presumption arises from his failure to do so.

In Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), involving a state court trial, the Court held that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

■ In the present case, there is no statute which can be interpreted to prevent commenting upon a defendant's self-wrought change of appearance. From a constitutional standpoint, it is well-established that a person may lawfully be compelled to exhibit or demonstrate physical characteristics.

In Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), a witness testified that the defendant had put on a blouse and it fit him. The defendant argued that this testimony violated his Fifth Amendment privilege because he had put on the blouse under duress. Mr. Justice Holmes dismissed the argument by saying that "the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." *Id.* at 252–253, 31 S.Ct. at 6.

Compelling a suspect to submit to a withdrawal of a sample of his blood for analysis for alcohol content and the admission in evidence of the analysis report are not compulsion prohibited by the privilege against self-incrimination. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Compelling a person to speak within hearing distance of the witnesses and even to utter words purportedly uttered by a bank robber are not prohibited compulsion. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Nor is the compelled production of recorded voice exemplars constitutionally prohibited. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L. Ed.2d 67 (1973). Nor is the compelled production of handwriting exemplars within the Fifth Amendment protection. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); United States v. Rogers, 475 F.2d 821 (7th Cir. 1973).

This authority would seem to support a requirement that defendant appear in court for identification as he appeared at the occurrence or at least as he appeared before he changed his physical appearance. But we need not go that far in this case because the court made no such requirement. The cases undoubtedly support the lesser tool for the prosecution, that is, commenting upon the change of appearance and introducing evidence that such change actually occurred and when it took place, in combating what is apparently becoming a popular defense tactic.

We have considered defendant's other arguments and find them to be without merit.

The conviction is affirmed.

Affirmed.