600 P.2d 756

**STATE of Arizona, Appellee,**

v.

**James Earl BRIDGES, Appellant.**

**No. 1 CA–CR 3754.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 2, 1979.

Rehearing Denied Sept. 14, 1979.

Review Denied Oct. 2, 1979.

Robert K. Corbin, Arizona Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Barbara A. Jarrett, Phoenix, for Appellee.

Gene R. Stratford, George M. Sterling, Jr., Phoenix, for appellant.

## OPINION

SCHROEDER, Presiding Judge.

After a jury trial, appellant James Earl Bridges was found guilty of first degree rape, first degree burglary and lewd and lascivious acts in violation of former A.R.S. §§ 13–611, 13–302 and 13–652 respectively.[1] He admitted having previously been convicted of first degree burglary. He was sentenced to 15 to 45 years for rape, 10 to 15 years for burglary and 4 to 5 years for lewd and lascivious acts, the sentences to run concurrently.

Appellant argues that he was denied his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel when certain statements and photographs of him taken at the time of his arrest were admitted into evidence. Additionally, he argues that there was insufficient foundation for the introduction of evidence of his involvement in a prior attempted burglary. We find no error and affirm the trial court's rulings.

The charges arose out of a five hour struggle on the evening of November 23, 1977, and the early morning of November 24, 1977, when the appellant broke into the 77-year-old victim's home, beat her severely about the face, forcibly raped her and forced her to commit an act of fellatio. Sometime between five and six a. m., at the appellant's direction, the victim called for a taxi. At trial the taxi driver identified the appellant as the individual he had picked up at the victim's house on the morning of November 24, 1977. He further testified that he drove the appellant around for approximately two hours and finally delivered him to a convenience market where the appellant and the cab driver went inside while appellant cashed a check and paid the driver. The appellant was also identified by the husband of the convenience market manager as being the man who arrived at the market in a taxi and the man whom he drove in his pickup from the convenience market to the home of a friend of the appellant.

The victim reported the crimes soon after they occurred and the police were able to trace the appellant's travels. He was arrested later that day.

Evidence was also produced at trial that appellant attempted to break into a residence across the street from the victim's home earlier that evening. A pair of boots, dentures, and other items were found under a tree in the neighbor's yard.

Shortly after he was arrested appellant was advised by the investigating officer of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The appellant stated that he did not wish to speak with the officer and that he wanted an attorney. The officer left the room, but then returned with the boots and dentures. He told the appellant to try on the boots and the appellant obeyed. He then handed the appellant the dentures. The appellant stated "[t]hanks, I needed these" and "[t]hey won't stay in without the

1. Now, 13–1406, 13–1508 and 13–1412 (Laws 1978).

stuff on them." Photographs were taken of the appellant wearing both the boots and the dentures.

■ Prior to trial, appellant filed a motion in limine to suppress the use of the photographs and the statements on the grounds that they were taken in violation of appellant's Fifth Amendment privilege against self-incrimination and Sixth Amendment right to counsel. Citing *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Davis v. Isreal*, 453 F.Supp. 1316 (E.D.Wis.1978), appellant argues on appeal that when he was required to put on the boots and dentures he was giving more than mere physical evidence and was compelled to give evidence of a testimonial or communicative nature in violation of his Fifth Amendment privilege and without assistance of counsel as required by the Sixth Amendment. We do not agree.

The basic principles which we must follow were laid down by the United States Supreme Court in the companion cases of *United States v. Wade, supra,* and *Gilbert v. State of California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). With respect to the privilege against self-incrimination, the Supreme Court drew a distinction between compelling the defendant to be the source of "real or physical evidence" and compelling him to give evidence which is "communicative or testimonial" in nature. The Court further held in *Wade* that compelling a defendant to appear in a lineup wearing pieces of tape and uttering words purportedly uttered by the robber, while not testimonial in nature so as to violate the prohibition against involuntary self-incrimination, was so fraught with the possibility of manipulation and misidentification that it was a "critical" stage of the proceeding requiring the right of counsel provided by the Sixth Amendment. In contrast, the Court held in *Gilbert* that a noncommunicative handwriting analysis, which could be preserved for future inspection and cross-examination, was properly admissible.

The distinctions between purely physical evidence which is admissible, and communi-cative or possibly misleading identification evidence which is not admissible, have been fleshed out in subsequent lower court cases. *See Annot.* 22 L.Ed.2d 987, 999 (1970). Challenged evidence was held admissible in *State v. Myers*, 117 Ariz. 79, 570 P.2d 1252 (1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978) (compelling a defendant to allow his hands to be photographed), and *State v. Brierly*, 109 Ariz. 310, 509 P.2d 203 (1973) (compelling a defendant to furnish pubic and head hair samples). An instructive case is *People v. Milone*, 43 Ill.App.3d 385, 356 N.E.2d 1350 (1976), which held that the taking of photographs of a suspect and impressions of his teeth in order to match them with bite marks on the body of the victim did not violate the Fifth Amendment. The Court emphasized that dental impressions, like fingerprints or voiceprints, are fixed characteristics of the body not protected by the privilege.

Acts communicative or testimonial in nature and therefore inadmissible are considered in *Davis v. Isreal, supra,* and *State v. Mason*, 164 N.J.Super. 1, 395 A.2d 536 (1979). In *Davis*, the police officers arrived at the defendant's home the day after a murder, and told defendant to put on the clothes he had worn the night before. He obeyed, and the police officers subsequently matched blood stains on his pants with the blood of the victim. The Court in granting his petition for habeas corpus held this evidence inadmissible because the conduct amounted to compelling the defendant to tell the police which pants he had worn the previous evening. The defendant's conduct was therefore testimonial in nature and inadmissible. In *State v. Mason*, the defendant was asked if she had any drugs. She made no verbal response but removed them from her purse and handed them to the police. Her response was tantamount to a verbal admission of possessing drugs. In neither of these cases was any physical characteristic ascertainable by physical examination of the defendant involved.

In this case, the key facts elicited by the defendant's conduct were that the dentures

and the boots fit. These were facts relating directly to the defendant's physical characteristics which would have been ascertainable by means of impressions of his mouth and feet. There is no logical reason to exclude the evidence simply because the fit was established by appellant's acts rather than such examination. Furthermore, we perceive no inherent dangers of fraud in the procedures employed, and the appellant has pointed to none. Whether the boots and dentures fit was a question adequately preserved for later challenge. The items were available to appellant throughout the proceedings and he had every opportunity to present his own evidence on this point and cross-examine the state's witnesses. The case is analogous to *Gilbert* holding that the taking of the handwriting sample was not a testimonial act nor a "critical" stage of the proceeding entitling petitioner assistance of counsel.

 Appellant also objects to the admission of his comments acknowledging ownership of the dentures when they were handed to him. These comments were voluntary and were not in response to any questioning by the officer. Thus, they were spontaneous and not compelled. *See State v. Landrum,* 112 Ariz. 555, 544 P.2d 664 (1976); *State v. Small,* 20 Ariz.App. 530, 514 P.2d 283 (1973); *State v. Holley,* 123 Ariz. 599 P.2d 835 (1979).

Next, appellant argues that evidence of a prior attempted burglary that evening should have been inadmissible because the evidence linking appellant to that incident was vague and unsubstantiated, relying upon *State v. Marahrens,* 114 Ariz. 304, 560 P.2d 1211 (1977). The evidence reflects that during the late evening of November 23, 1977, the neighbor, Mrs. Jimas, was awakened when she heard glass breaking in her house. She and her son found broken glass on top of the couch and discovered that the screen door had been cut. The personal items mentioned earlier, along with appellant's wallet which included identification and a photograph, were found in the front yard. In addition, a next door neighbor of Mrs. Jimas testified that on two

occasions that same evening he chased the appellant from his apartment and saw him crawl over the fence into Mrs. Jimas' yard. We believe this evidence was sufficient and properly admissible.

The judgment and sentences are affirmed.

JACOBSON and WREN, JJ., concur.