558 A.2d 1226

Glenmore A. MORGAN

v.

STATE of Maryland.

No. 1486, Sept. Term, 1988.

Court of Special Appeals of Maryland.

June 12, 1989.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr. (Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty., for Montgomery County, Rockville, on the brief), for appellee.

Submitted before GARRITY, ALPERT and BLOOM, JJ.

ALPERT, Judge.

We are called upon to decide whether requiring a defendant to don an article of clothing in the courtroom in front of the jury so that the jury may see if the article of clothing fits violates his privilege against compelled self-incrimination under the 5th Amendment of the United States Constitution and Article 22 of Maryland's Declaration of Rights.

In the case before us, Glenmore Morgan, appellant, was charged with possession of cocaine with intent to distribute, possession of cocaine and possession of controlled paraphernalia. During a jury trial in the Circuit Court for Montgomery County, the court required the defendant to put on a jacket seized from 40 Bailey Court in Silver Spring, Maryland by officers of the Montgomery County Police Department pursuant to a search warrant.

At the time the search warrant was executed, defendant and two other men were present in the living room of the residence. After the two other men retrieved their coats, appellant queried, "What about my jacket?" When asked by the police if a jacket located on the loveseat in the living room was his, appellant hesitated before responding, "No." A police search of the jacket revealed a small quantity of cocaine, a beeper, keys to the residence and a key to a safe in the kitchen. During a search of the safe, the police discovered a bottle of inositol powder, several baggies, razor blades, measuring spoons, a box containing a grinder, and twenty-three grams of cocaine. Appellant was convicted on all charges and sentenced to a total of ten years in prison.

In pertinent part, the Fifth Amendment of the United States Constitution provides: "No person ... shall be compelled in any criminal case to be a witness against himself." Similarly, Article 22 of Maryland's Declaration of Rights states, "That no man ought to be compelled to give evidence against himself in a criminal case." Appellant contends

that the court's order requiring him to put on the jacket in front of the jury violated his constitutional right against compelled self-incrimination. He relies upon *Allen v. State,* 183 Md. 603, 39 A.2d 820 (1944) to support his argument.

In *Allen,* the trial court required the defendant in an assault with intent to rape trial to try on a hat that was found near the scene of the crime in front of the jury. At the time, the defendant was on the stand being cross-examined by the State as to his denial of ownership of the hat.[1] An earlier witness had testified that the hat was owned by Allen. The jury convicted Allen of the crime, and he was sentenced to death. In reversing and remanding for a new trial, the Court of Appeals acknowledged that the facts of the case brought it "close to the borderline in applying the doctrine against compulsory self-incrimination." *Id.* at 613, 39 A.2d 820. The court went on to state:

It is to be borne in mind that the particular purpose in seeking to have the accused try on the hat was not to aid in identifying him by showing how he looked with it on or off, ... but was for the sole purpose of attempting to prove his ownership of this incriminating article. If the conformity or fit of the hat had been perfect, or convincingly close to perfection, that fact would have appeared from the enforced action of the accused. If the result of the experiment had been otherwise, as claimed by him, the very fact that he objected to making it would have been prejudicial. In either event, it amounted to a clear case of testimonial compulsion.

*Id.* at 612–13, 39 A.2d 820.

Subsequent Court of Appeals decisions, however, have cast great doubt upon the current viability of the *Allen* decision. In *Williams v. State,* 231 Md. 83, 188 A.2d 543 (1963), *cert. denied,* 375 U.S. 851, 84 S.Ct. 109, 11 L.Ed.2d 78 (1963), Williams was convicted of a narcotics violation. On appeal, he relied upon *Allen* in contending that an order

---

**1.** At the time of his arrest, Allen admitted owning the hat, but he told the police that the hat had been stolen from him several days earlier.

from a police officer after his arrest to show the officer his arms violated his right against compelled self-incrimination.[2] In upholding Williams' conviction, the court stated, "But [*Allen* ], *if correctly decided,* has been confined to its particular facts and has no application to tests or observations made by third persons out of court." *Id.* at 86–87, 188 A.2d 543 (emphasis added).

The Court of Appeals in *Andrews v. State,* 291 Md. 622, 436 A.2d 1315 (1981), upheld a trial court order restraining Andrews from shaving his head or facial hair until the conclusion of his trial. Purportedly, he had changed his appearance immediately after the crime in question by shaving his head and beard. The trial court order was designed to prevent the defendant from defeating "legitimate avenues of identification" by disguising his appearance. *Id.* at 626, 436 A.2d 1315. The Court of Appeals upheld this court's affirmance of the trial court's order. In so doing, the Court of Appeals again distinguished *Allen* :

It will be seen immediately that the facts of this case are in no way analogous to that before the Court in Allen. The sole purpose there, as the court pointed out, was an attempt to prove his ownership in the incriminating article, a fact which would have aided an inference of guilt. This amounted to a clear case of testimonial compulsion. It is significant that one may infer from the language of the second paragraph we have quoted above that the Court would have reached a different result had the hat been tried on for purposes of identification only.

*Id.* at 635, 436 A.2d 1315. In addition, the court considered as "[a]nother factor to be considered" the *Williams* court's distinction of *Allen,* even emphasizing the phrase "if correctly decided" in *Williams. Id.* at 636, 436 A.2d 1315.

Unfortunately, we cannot likewise distinguish *Allen* from

---

**2.** The presence of fresh needle tracks was revealed when Williams complied with the officer's order.

the present circumstances.[3] The questioned act here, as in *Allen*, took place in front of the jury and was for the purposes of proving ownership, not for the purposes of witness identification. In light of recent Supreme Court authority and the overwhelming amount of contrary decisions in other jurisdictions, however, we believe the holding in *Allen*, while never expressly over-ruled, is no longer viable. As was the intermediate appellate court in *State v. Miller*, 6 Kan.App.2d 432, 629 P.2d 748, 749 (1981), "this court is duty-bound to follow the law as established by the [highest appellate court] of our state in the absence of some indication that it is departing from its previously expressed position." We believe that our Court of Appeals, if presented with an indistinguishable scenario, would act upon its reservations regarding *Allen* and expressly over-rule it.[4]

---

**3.** One possible difference between our case and *Allen* is the fact that, in *Allen*, the defendant was testifying on the witness stand. A compelled test to determine if the hat fit him immediately following his denial of ownership could be seen as "more testimonial" than if the test was conducted on a non-testifying criminal defendant. We do not, however, consider this difference to be significant. Here the defendant denied ownership of the coat at the time of his arrest. This denial was testified to by one of the arresting officers. Thus, requiring the defendant to don the coat in this case serves the same purposes and gives rise to the same evidentiary inferences as those present in *Allen*.

**4.** In a recent decision from a federal Circuit Court of Appeals, the court declined to follow a Supreme Court income tax decision because it was "inconsistent with the Supreme Court's latest decisions":

Following an obviously outdated Supreme Court decision gives effect to an old decision only at the cost of ignoring more recent decisions. It forces the Supreme Court to reverse lower court decisions following the older law, burdening both the Supreme Court and litigants. It also deprives the Supreme Court of the benefit of a contemporary decision on the merits by the Court of Appeals. *See Mackey v. United States,* 401 U.S. 667, 680, 91 S.Ct. 1160, 1173, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring and dissenting); *McCray v. New York,* 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 [ (1983) ] (Stevens, J., concurring in denial of certiorari).

*Vukasovich, Inc. v. C.I.R.,* 790 F.2d 1409, 1416 (9th Cir.1986). In holding that "courts of appeal should decide cases according to their reasoned view of the way the Supreme Court would decide the

First, we note that the distinctions referred to in *Williams* and *Andrews, supra,* are not particularly relevant in a compelled self-incrimination context. The fact that the exertion of state compulsion takes place prior to trial does not render such actions constitutionally permissible solely because the ensuing incriminating "statement" is testified to by a third person. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)(statements made in police custody may be rendered inadmissible in subsequent trial if coerced or elicited by duress as a violation of one's right against compelled self-incrimination).

Further, the State's purpose in compelling the defendant to perform an act does not necessarily convert a non-testimonial communication into a testimonial communication. Rather, it is the character of the purported communication itself that is important in determining whether it is "testimonial" for the purposes of the Fifth Amendment. Thus, applying the privilege against compelled, self-incrimination to a situation where a prisoner was compelled to put on a blouse that "fitted him" would constitute "an extravagant extension of the 5th Amendment." *Holt v. United States,* 218 U.S. 245, 252, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910).[5] *See also Brooks v. United States,* 494 A.2d 922 (D.C.App.1984) (compelling a defendant to put on a coat in front of the jury where defendant has disclaimed ownership does not violate right against compelled self-incrimination regardless of

---

pending case today," the court quoted an insightful passage from a dissenting opinion written by Judge Learned Hand:
> It is always embarrassing for a lower court to say whether the time has come to disregard decisions of a higher court, not yet explicitly overruled, because they parallel others in which the higher court has expressed a contrary view ... [T]he measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before it.

*Id.* (quoting *Spector Motor Service v. Walsh,* 139 F.2d 809, 823 (2d Cir.); *vacated sub nom, Spector Motor Service v. McLaughlin,* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944) (L. Hand, J., dissenting)).

5. In *Holt,* the donning of the blouse occurred prior to trial and was testified to by a third party. The Supreme Court certainly did not emphasize these factors as being in any way important to its decision.

whether State's purpose is for identification or to prove ownership).

In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court stated that the privilege against compelled self-incrimination "protects an accused only from being compelled to testify against himself or otherwise provide the State with evidence of a testimonial or communicative nature, ..." *Id.* at 761, 86 S.Ct. at 1830 (holding that compelled submission to a chemical analysis of one's blood for its alcohol content does not violate the privilege). The Court discussed its earlier decision in *Holt, supra,* as an example where the 5th Amendment privilege against compelled self-incrimination is *not* implicated. The Supreme Court hypothesized as to when a real or physical examination may be testimonial in value:

Some tests seemingly directed to obtain "physical evidence," for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial. To compel a person to submit to testing in which an effort will be made to determine physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment. Such situations call to mind the principle that the protection of the privilege "is as broad as the mischief against which it seeks to guard." *Counselman v. Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 198 [35 L.Ed. 1110 (1892)].

*Id.* 86 S.Ct. at 1832. Added to the lie detector scenario would be a situation where a behavioral specialist or psychologist were called to testify to interpret appellant's visual physiological responses to questioning as evidence of his guilt or innocence. Requiring a defendant to put on an article of clothing, similar in purpose to finger-printing, albeit not nearly as conclusive, simply does not constitute an act compelling a testimonial or communicative response. The fact that an article of clothing fits may give rise to an inference of ownership, which under the facts of any given case could be incriminating, is no more a communicative

response from the defendant than would be the case where fingerprints were matched.

Since *Schmerber,* several courts have been faced with the issue of whether compelling a defendant to put on an article of clothing in front of the jury to determine fit constitutes a violation of the privilege against self-incrimination. Every such case has held that such an experiment or test does not impinge on the privilege. *See, e.g., Brooks, supra; People v. Warmack,* 73 Ill.App.3d 783, 29 Ill.Dec. 777, 392 N.E.2d 334 (1979), *rev'd on other grounds,* 83 Ill.2d 112, 46 Ill.Dec. 141, 413 N.E.2d 1254 (1980) (no violation of the privilege where defendant in a robbery trial ordered to put on clothing to determine whether it fits him);[6] *Partlow v. State,* 453 N.E.2d 259 (Ind.1983) (privilege was not violated where defendant was required to don a sweater which was found wrapped around murder victim's purse); *People v. Markley,* 99 Mich.App. 658, 298 N.W.2d 615 (1980), *rev'd on other grounds,* 413 Mich. 852, 317 N.W.2d 528 (1982) (requiring defendant at robbery trial to put on jacket and boots found near the scene of the robbery did not violate the privilege); *State v. Walls,* 637 S.W.2d 812 (Mo.App.1982)(requiring defendant in robbery case to put on clothes found in a bag near the scene of the robbery "to prove the clothing did not belong to the person six inches taller and the clothing did in fact fit the defendant" did not violate the privilege); *State v. Lerner,* 112 R.I. 62, 308 A.2d 324 (1973)(requiring defendants at a double homicide trial to don jackets identified as worn on the day of the murder "to demonstrate only that the clothing fit the defendants" did not violate the privilege); *State v. Bauman,* 77 Wash.2d 938, 468 P.2d 684 (1970)(where defendant was charged with murdering his girl friend, requiring him to try on blood stained shirt found

---

**6.** In *Warmack,* the intermediate appellate court reversed the defendant's conviction on the grounds that evidence of a State's witness' prior conviction should have been admitted for impeachment purposes. In reversing the intermediate appellate court and upholding the conviction, the Illinois Supreme Court tacitly found that compelling a defendant to don an article of clothing to determine fit does not violate the privilege.

at the murder scene to determine whether it fit him did not violate the privilege); *cf. State v. Bridges,* 123 Ariz. 452, 600 P.2d 756 (App.1979)(officer's compulsion of defendant shortly after his arrest to try on boots and dentures found near rape scene to determine whether they fit did not violate right against self-incrimination); *Commonwealth v. Williams,* 317 Pa.Super. 456, 464 A.2d 411 (1983)(requiring defendant in rape case to don a shirt and jacket found near the scene to determine whether they fit had probative evidentiary value that outweighed any prejudicial effect). As clearly communicated in *Brooks, supra:*

> By granting the prosecutor's request to order appellant to don the coat in the presence of the jury, the trial court compelled appellant to disclose nothing of his personal knowledge. The evidence, therefore, is real, not communicative. To hold otherwise would suggest that "the defendant in Holt who put on the blouse 'communicated' that the blouse might be his because it fit him. This is not communication within the meaning of the Fifth Amendment." *Lewis v. United States,* 127 U.S.App.D.C. 269, 271, 382 F.2d 817, 819 (citations omitted), cert. denied, 389 U.S. 962, 88 S.Ct. 350, 19 L.Ed.2d 377 (1967). Moreover, it is of no consequence that appellant declined to take the stand to testify on his own behalf; his physical display simply does not constitute "testimony".

*Id.* 494 A.2d at 925.

In the case *sub judice,* the trial court order requiring defendant to don a coat, which admittedly contained incriminatory evidence, to determine whether it fit him did not constitute a compulsion to elicit communicative or testimonial evidence from the defendant. As the appellate courts in Maryland construe both the Fifth Amendment privilege and Article 22 of the Declaration of Rights *in pari materia, Andrews, supra,* 291 Md. at 626–27, 436 A.2d 1315, neither privilege was infringed by the actions of the trial court.[7]

---

7. Because the issues were not raised, we need not decide whether circumstances similar to the one in the present case could ever

Especially in light of our holding as to appellant's first contention, his remaining contention must fall. The evidence was abundantly sufficient to convict defendant on all the counts of this indictment. *See Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.

become so prejudicial or inflammatory as to outweigh the probative value of the test or whether, in particularly egregious circumstances, State conduct could arise to such a level as to "shock the conscience" of the court, thereby constituting a due process violation. *See Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Andrews, supra* 291 Md. at 638–39, 436 A.2d 1315.