817 A.2d 901

Kevin **WYATT**

v.

**STATE of Maryland.**

No. 2138, Sept. Term 2001.

Court of Special Appeals of Maryland.

Feb. 27, 2003.

Richard Winelander, Baltimore, for appellant.

Celia A. Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, both of Baltimore, and Joseph I. Cassily, State's Attorney for Harford County of Bel Air, on the brief), for appellee.

Argued before MURPHY, C.J., JAMES R. EYLER, RAYMOND G. THIEME, JR., (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge, Retired, specially assigned.

On November 21, 2001, Kevin Wyatt, appellant, was convicted by a jury in the Circuit Court for Harford County of driving while under the influence of alcohol, in violation of section 21–902(b) of the Maryland Code's Transportation Article, for an incident that occurred on December 14, 1999. *See* Md.Code, Transp. § 21–902(b) (1999 Repl.Vol.). The court sentenced appellant to one year imprisonment with all but four months suspended.

The State, over objection, introduced into evidence appellant's refusal to submit to a breathalyzer test and an Advice of Rights Form (DR–15), which was given to appellant at the time of the incident and explained the consequences of appellant's refusal to submit to the test. *See* Md.Code, Cts. & Jud. Proc. § 10–309 (1999 Repl.Vol.); Md.Code, Transp. § 16.205.1 (1999 Repl.Vol.). The court denied appellant's request that the jury be instructed that it could not draw an inference or presumption of guilt based on appellant's refusal to take a breathalyzer test. On appeal, appellant contends that the court erred in admitting the evidence described above and in

refusing to give the requested instruction. Perceiving no error, we shall affirm the judgment of the circuit court.

## Factual Background

At 1:30 in the morning on December 14, 1999, Officer Jeffrey Knight of the Bel Air Police Department observed a vehicle, operated by appellant, driving erratically. Officer Knight watched as the vehicle swerved between the right and left lanes, drove above the speed limit, and drove in the lane facing oncoming traffic. Officer Knight initiated a traffic stop because, based on his experience and his observations, he believed that the driver was under the influence of alcohol or drugs. Once he approached the vehicle, Officer Knight detected that the driver, appellant, emitted a strong odor of alcohol. The driver did not comprehend the officer's repeated request to produce his registration card, and when Officer Knight asked how much alcohol he had had to drink, appellant responded that he had had three or four beers.

Officer Knight then asked appellant to get out of the car to perform standardized field sobriety tests. He observed that appellant was unsteady on his feet, using the car door to keep his balance, and that appellant's eyes were bloodshot. When Officer Knight began to administer the horizontal gaze nystagmus test, appellant declared, "I refuse, I absolutely refuse to take any tests. Arrest me, whatever, but I am not taking any tests." Appellant was arrested, transported to the police station, and advised of his right to submit to a breath test for alcohol according to the standard form DR–15. After being informed of his rights, appellant refused to submit to the breathalyzer test.

On November 20, 2001, appellant appeared in the Circuit Court for Harford County to be tried for driving while intoxicated and driving under the influence of alcohol, in violation of section 21–902(a) and (b) of the Transportation Article. Md. Code, Transp. § 21–902(a)–(b) (1999 Repl.Vol.).[1] During the

---

1. At the time that appellant was arrested, section 21–902, subsections (a) and (b), of the Transportation Article provided as follows:

trial, appellant made a motion to exclude the testimony of his refusal to submit to a breathalyzer test. The court denied appellant's motion, reasoning that the new law was applicable because it did not create a new criminal act, but only established a new rule of evidence. Counsel renewed the objection prior to admission of this evidence and the introduction of the Advice of Rights Form DR–15. Appellant testified in his own defense, admitting that he had been speeding and weaving between lanes, that he had been at a bar for approximately six hours, and that he had been drinking, stating that he had two Bass Ales. Appellant also disputed Officer Knight's description of the weather as dry, denied that he was impaired by alcohol, and claimed that his bloodshot eyes were caused by smoke in the bar.

At the close of the case, appellant's counsel requested that the court instruct the jury that no inference or presumption of guilt arises because of appellant's refusal to submit to a breathalyzer test. When the court failed to include such an instruction, counsel took exception.

On November 21, 2001, the jury convicted appellant of driving while under the influence of alcohol and acquitted him

---

(a) Driving while intoxicated or intoxicated per se. —
   (1) A person may not drive or attempt to drive any vehicle while intoxicated.
   (2) A person may not drive or attempt to drive any vehicle while the person is intoxicated per se.
(b) Driving while under the influence of alcohol.—A person may not drive or attempt to drive any vehicle while under the influence of alcohol.
In addition, section 11–127.1 of the Transportation Article defined the term "intoxicated per se" as "having an alcohol concentration ("BAC") at the time of testing of 0.10 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath."
   In 2001, the Maryland legislature enacted amendments that reduced the BAC level for what previously was termed "intoxicated per se" from 0.10% to 0.08%. The bill also substituted the term "under the influence of alcohol" for "intoxicated," as used in section 21–902(a), and "impaired by" for "under the influence of," as used in section 21–902(b).
   The statutory framework is important because it demonstrates that the State was not required to prove a certain BAC to sustain a conviction under either subsection (a)(1) or (b).

of driving while intoxicated. Appellant noted a timely appeal to this Court.

## Questions Presented

On appeal, appellant presents two main questions for our review, one of which is subdivided into four parts. First, appellant argues that the trial court erred in admitting evidence of appellant's refusal to submit to a breathalyzer test. More specifically, appellant contends that the evidence should have been excluded because (1) the amended version of section 10–309 of the Courts and Judicial Proceedings Article, which expressly permitted the admission of such evidence, is rendered unconstitutional by the *ex post facto* provisions of the Maryland and federal constitutions when applied to an event that occurred prior to its effective date, (2) the amended version of section 10–309 violates the self-incrimination provision of the Maryland Declaration of Rights, (3) it was not relevant to any issue in the case, and (4) its probative value was outweighed by the danger of unfair prejudice. Finally, appellant claims that the court erred in failing to instruct the jury that no inference or presumption of guilt arises because of a refusal to submit to a breathalyzer test.

Appellee argues that the court properly admitted the evidence based on its application of the amended version of section 10–309, and even if admitting such evidence was error, it constituted harmless error. In addition, appellee contends that appellant's argument pertaining to inadequate jury instructions was not preserved, and if preserved, the trial court did not err in refusing to give appellant's instruction because it did not accurately reflect the law at the time of the trial.

## Discussion

Because resolution of this case depends on our determination of whether the amended version of section 10–309 was properly applied during appellant's trial, we begin by reviewing the relevant provisions prior and subsequent to the 2001 amendments. We must also review relevant case law inter-

preting the former version of 10–309 in order to demonstrate its meaning at the time that appellant was arrested.

In 1999, section 10–309 of the Maryland Code's Courts and Judicial Proceedings Article provided in pertinent part:

(a) Test not compulsory.—

(1) Except as provided in § 16–205.1(c) of the Transportation Article, a person may not be compelled to submit to a test or tests provided for in this subtitle. Evidence of a test or analysis is not admissible in a prosecution for violation of § 21–902 of the Transportation Article if obtained contrary to its provisions.

*(2) No inference or presumption concerning either guilt or innocence arises because of refusal to submit. The fact of refusal to submit is admissible in evidence at the trial.*

Md.Code, Cts. & Jud. Proc. § 10–309(a) (1999 Repl.Vol.) (emphasis added). Although the language appears to suggest that the fact of refusal was admissible, the Court of Appeals, in *Krauss v. State,* 322 Md. 376, 587 A.2d 1102 (1991), interpreted the two sentences of subsection (b) as permitting the admission of such evidence *only* where it was relevant to a material issue other than the guilt of the accused. *Id.* at 386–88, 587 A.2d 1102 (emphasis added). The *Krauss* Court reasoned that:

From the provisions of the statute, it is obvious that the Legislature recognized that the mere fact of refusal to take the Breathalyzer test was collateral to the issue of whether a driver was intoxicated or under the influence of alcohol. In other words, the refusal was not material or relevant to the issue of guilt or innocence. But, the Legislature also appreciated that in certain circumstances the fact of refusal to submit to the test may be material and relevant to collateral matters, that is, issues other than guilt or innocence, as, for example, when a defendant claims the enforcement authorities did not properly afford an opportunity to take the test. Thus, it made the refusal admissible, but subjected the admission to the restriction.

*Id.* at 386–87, 587 A.2d 1102. Because the defendant in *Krauss* did not challenge that he was properly informed as to the taking of the test and that he refused to take it, the Court concluded that his refusal had no probative value to establish guilt and was, therefore, irrelevant. *Id.* at 388, 587 A.2d 1102.

Between the time that the offense was committed and the time that appellant was tried, two amendments to section 10–309 took effect. The first, which became effective on October 1, 2000, simply rewrote subsection (a)(1), dividing it further into (a)(1)(i) and (a)(1)(ii), without changing any of the provision's substance. *See* H.B. 676, 2000 Leg., 414th Sess. (Md. 2000). The 2000 amendment also divided subsection (a)(2) into (a)(2)(i) and (a)(2)(ii), making no changes to the provision's language. *Id.* In 2001, the General Assembly passed legislation that deleted the language "[n]o inference or presumption concerning either guilt or innocence arises because of refusal to submit." *See* H.B. 338 and S.B. 4, 2001 Leg., 415th Sess. (Md.2001). The preamble to the bills state:

> FOR the purpose of repealing a prohibition against an inference or presumption concerning guilt or innocence arising because of a person's refusal to submit to a certain test for alcohol ... and generally relating to evidence of a person's refusal to submit to a certain test for alcohol ... in prosecutions of certain alcohol ... related driving offenses.

2001 Md. Laws ch. 1 and 2. The bills state that the law is effective October 1, 2001 and are otherwise silent with respect to prospective versus retrospective application. *Id.*

### Applicability of 10–309, as amended

■ Based on their briefs, it is clear that both parties start under the assumption that the amended version of section 10–309, effective October 1, 2001, applies to this case. Accordingly, their arguments center on the provision's constitutionality, rather than its applicability. Nevertheless, because we should not decide a constitutional issue needlessly, *Prof. Staff Nurses Ass'n v. Dimensions Health Corp.*, 346 Md. 132, 138, 695 A.2d 158 (1997) ("This Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can

properly be disposed of on a non-constitutional ground.") (quoting *State v. Lancaster*, 332 Md. 385, 404 n. 13, 631 A.2d 453 (1993) (citing numerous cases)), we shall first discuss applicability of the statute using rules of construction to determine prospective versus retroactive application.

In *State Commission on Human Relations v. Amecom Division*, 278 Md. 120, 123, 360 A.2d 1 (1976), the Court of Appeals defined a retroactive statute as "one which purports to determine the legal significance of acts or events that have occurred prior to the statute's effective date." This definition is relevant to the present case because the circuit court applied the amended rule, effective October 1, 2001, to appellant's refusal to submit to the breathalyzer test, which occurred on December 14, 1999.[2]

As a starting point, we recognize that "[t]here is 'no absolute prohibition against retroactive application of a statute.' " *Langston v. Riffe*, 359 Md. 396, 406, 754 A.2d 389 (1999) (quoting *Amecom Division*, 278 Md. at 123, 360 A.2d 1). In fact, the determination of whether prospective or retroactive application is warranted focuses primarily on legislative intent. *Id.* In general, there is a presumption in favor of prospective application such that, in the absence of clear legislative intent to the contrary, a statute will not be given retroactive effect. *Id.* There are exceptions to the general presumption, however. *Id.*

One important exception to the general rule concerns statutes that constitute procedural, rather than substantive, changes to the law. *Id.* at 406–07, 754 A.2d 389. "When a statute affects only a procedure or remedy, and not a substantive right, the presumption in favor of prospective application does not apply." *Tyrone W. v. Danielle R.*, 129 Md.App. 260,

---

2. "The 'retroactive' or 'retrospective' application of a legislative enactment has been defined in 2 Norman J. Singer, Sutherland's Statutory Construction, § 41.01, at 337 (5th ed. 1993): 'The terms retroactive and retrospective are synonymous in judicial usage and may be employed interchangeably.' " *Langston v. Riffe*, 359 Md. 396, 406, 754 A.2d 389 (2000).

278, 741 A.2d 553 (1999) (citing *Informed Phys. Servs., Inc.,* 350 Md. at 327, 711 A.2d 1330 and *Amecom Div.,* 278 Md. at 124, 360 A.2d 1). *See also Roth v. Dimensions Health Corp.,* 332 Md., 627, 636, 632 A.2d 1170 (1993); *Mason v. State,* 309 Md. 215, 219–20, 522 A.2d 1344 (1987); *Janda v. General Motors Corp.,* 237 Md. 161, 168, 205 A.2d 228 (1964), *disapproved in part on other grounds by WSSC v. Riverdale Heights Vol. Fire Co.,* 308 Md. 556, 520 A.2d 1319 (1987); *Kelch v. Keehn,* 183 Md. 140, 144, 36 A.2d 544 (1944). Instead, the statute will be given retrospective effect unless a contrary intention is expressed. *Tyrone W.,* 129 Md.App. at 278, 741 A.2d 553.

■ In the present case, the 2001 amendment to section 10–309 constituted a procedural change in the law, rather than a substantive change, suggesting that retroactive application is appropriate. *See Thompson v. Missouri,* 171 U.S. 380, 386–88, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (holding that a statute that changed a rule of evidence, allowing the admission of evidence against the accused that was previously inadmissible, was not unconstitutional when applied retroactively because it did not affect a substantive right but only changed a procedural mechanism). The amendment to section 10–309 is a legislative declaration of relevance to the question of guilt subject, in a given case, to weighing the evidence's probative value against undue prejudice and subject to other reasons for exclusion. While the amendment makes refusal to take a breathalyzer test admissible, admissibility remains subject to the usual evidentiary limitations on relevant evidence. The amendment permits, but does not require, a factfinder to draw an inference of guilt. Accordingly, like the Supreme Court in *Thompson,* we view the expansion of the scope of admissible evidence as a procedural, rather than substantive, change.

In addition, turning to the second part of the exception, we perceive no clear expression suggesting that the legislature intended to limit the amendment's application to prospective only. First, other than stating that it is effective October 1, 2001, the statute itself is silent on the issue of retroactive

versus prospective application. Other clues support a finding in favor of retroactive application. For example, the bills that were enacted to amend section 10–309 were signed into law on April 10, 2001. On that same day, the legislature enacted amendments to other statutes falling within the broad topic of "drunk and drugged driving," whereby, in pertinent part, it reduced the level of alcohol concentration required for conviction of an offense and changed the terminology for alcohol related offenses. *See* H.B. 3 and S.B. 108, 2001 Leg., 415th Sess. (Md.2001). Those bills stated that they were effective September 30, 2001, and further provided that "this Act shall be construed only prospectively and may not be applied or interpreted to have any effect on or application to any test for alcohol concentration taken before the effective date of this Act." *Id.* This language clearly demonstrates that the legislature is capable of expressing its intention that a law only be applied prospectively. Absent such an express intention in the present case, coupled with our view that the change was procedural in nature, we conclude that retrospective application was appropriate.

## Ex Post Facto

Given our conclusion that retroactive application was appropriate, we turn to appellant's argument that section 10–309 is rendered unconstitutional, in application, by the *ex post facto* provisions of the Maryland and federal constitutions.[3] Both the United States Constitution and the Maryland Declaration of Rights prohibit *ex post facto* laws. *See* U.S. Const. art. I, § 10, cl. 1; Md. Decl. of Rts., art. 17. Although their language differs, the Court of Appeals has interpreted the Maryland version as having the same meaning as its federal coun-

---

**3.** In *Calder v. Bull,* 3 U.S. 386, 391, 3 Dall. 386, 1 L.Ed. 648, Justice Chase, speaking for the Supreme Court, explained that "[e]very ex post facto law must necessarily be retrospective; but every retrospective law is not an ex post facto law: The former, only, are prohibited." Applying the same principle, the Court of Appeals, in *Janda v. General Motors Corp.,* 237 Md. 161, 205 A.2d 228 (1964), explained that a statute will not be applied retroactively if it operates as an *ex post facto* law. *Id.* at 169, 205 A.2d 228.

terpart. *Frost v. State,* 336 Md. 125, 136, 647 A.2d 106 (1994) (quoting *Booth v. State,* 327 Md. 142, 608 A.2d 162 (1992)). The *Frost* Court also recognized that one of the critical elements for a law to be considered *ex post facto* is that it operate retroactively. *Id.* Because we have already concluded that section 10–309 applies retroactively, we move on to the other factors that enable us to determine whether the amended statute operates as an unconstitutional *ex post facto* law when applied to appellant's situation.

Appellant cites the Supreme Court cases of *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798), and *Carmell v. Texas,* 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000) for the proposition that "[l]aws that alter legal rules of evidence and require less evidence to obtain conviction are *ex post facto* laws." Comparing the amended statute in question to the language in *Calder* and *Carmell,* appellant contends that the amended statute falls within the fourth category, quoted in the preceding sentence, because it (1) reduces the quantum of evidence necessary to obtain a conviction, (2) changes the legal consequence of acts completed before its effective date, and (3) subverts the presumption of innocence. Appellant provides no case law to support the assertion, instead relying on general language from *Carmell* discussing "unfairness" and "injustice." *See Carmell,* 529 U.S. at 546, 120 S.Ct. 1620. Appellant's argument ignores the fact that countless cases, following *Calder* through the present, have interpreted the relevant language and provide further clarification as to the types of laws that conflict with the constitutional prohibition.

In *Calder,* Justice Chase, writing for the Supreme Court, clarified which laws, within the words and intent of the prohibition, are considered *ex post facto* laws, stating:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules

of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder,* 3 U.S. at 390, 3 Dall. 386, 1 L.Ed. 648. Because appellant only argues that the amended statute falls within the fourth category, our discussion will focus solely on the interpretation and application of that language. While some members of the Supreme Court have suggested that the fourth category from *Calder* has been abandoned, the *Carmell* opinion suggests that a majority of the Court continues to support its existence. *Compare Carmell,* 529 U.S. at 531, 120 S.Ct. 1620 (characterizing the Texas law as squarely within the fourth category and invalidating it on that basis), *with Carmell,* 529 U.S. at 567, 120 S.Ct. 1620 (Ginsburg, J., dissenting) (joined by Chief Justice Rehnquist and Justices O'Connor and Kennedy, Justice Ginsburg asserted that "a strong case can be made that [the Court] pared the number of *Calder* categories down to three, eliminating altogether the fourth category on which the Court today so heavily relies").

Accepting the Supreme Court's statement that the fourth category remains alive and well, we turn to two significant cases, in which the Supreme Court applied the fourth *Calder* category, to demonstrate why the statute in the present case does not fall within the category and is, therefore, not unconstitutional. First, in *Hopt v. Territory of Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), the Court held that application of a Utah law, enacted between the time the defendant committed the offense and the time of his trial, which allowed felons to testify in criminal trials, did not violate the *Ex Post Facto* Clause because:

Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done; nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission; nor do they alter the degree,

or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed.

*Id.* at 589, 4 S.Ct. 202. The Court reasoned that laws that merely remove restrictions upon the competency of certain classes of person as witnesses constitute procedural changes, in which individuals do not have a vested right. The State is free to remove such restrictions at its discretion. *Id.* at 590, 4 S.Ct. 202.

Following *Hopt,* in *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898), the Supreme Court was faced with a similar challenge to a Missouri statute on *ex post facto* grounds. In *Thompson,* the defendant was convicted of first-degree murder for killing a priest with poison. *Id.* at 380, 18 S.Ct. 922. During trial, the court admitted letters written by the defendant, allowing the jury to compare the handwriting in the letters to that on the prescription for the poison. *Id.* at 381, 18 S.Ct. 922. When the defendant committed the offense, such letters were inadmissible as a matter of law, but prior to trial, the Missouri legislature enacted a law that made the letters admissible. *Id.* The Supreme Court held that the court's application of the new law during defendant's trial did not violate the *Ex Post Facto* Clause, reasoning that procedural laws were only *ex post facto* when they disadvantaged the party by affecting a substantial right. *Id.* at 387, 18 S.Ct. 922. Because the new law "left unimpaired the right of the jury to determine the sufficiency or effect of the evidence . . . and did not disturb the rule that the State . . . must overcome the presumption of innocence and establish his guilt beyond a reasonable doubt," the Court concluded that the defendant did not have a vested right in the former rule of evidence and affirmed the trial court's application of the new law. *Id.* at 387–88, 18 S.Ct. 922.

Having reviewed *Hopt* and *Thompson,* we conclude that appellant's reliance on *Carmell* is misplaced because the majority's conclusion that the law violated the *Ex Post Facto* Clause was based primarily on its determination that the amended law, which "changed the quantum of evidence neces-

sary to sustain a conviction," constituted a sufficiency of the evidence rule, rather than a rule regarding the competency or admissibility of evidence. *Carmell,* 529 U.S. at 530, 120 S.Ct. 1620. According to Justice Stevens, this factor brought the amendment "squarely within the fourth [Calder] category." *Id.* at 531, 120 S.Ct. 1620. Unlike the law in *Carmell,* and contrary to appellant's suggestion, the amended statute in the present case does not change the quantum of evidence necessary to sustain a conviction, but instead relates to the admissibility of evidence, making it more analogous to the *Hopt* and *Thompson* line of cases.

Following the *Hopt* and *Thompson* reasoning, a Missouri appellate court, in *State v. Stevens,* 757 S.W.2d 229 (Mo.App. 1988), upheld the retroactive application of a statute that, like the one in the present case, was amended to permit the admissibility of a defendant's refusal to submit to a breathalyzer test. First, the *Stevens* court compared the Missouri statute to the one in *Thompson,* concluding that "[a]s in *Thompson,* the statute involved in this case 'did nothing more than remove an obstacle arising out of a rule of evidence that withdrew from the consideration of the jury testimony which, in the opinion of the legislature, tended to elucidate the ultimate, essential fact to be established, namely, the guilt of the accused.'" *Id.* at 231 (citing *Thompson,* 171 U.S. at 387, 18 S.Ct. 922). Next, the court reviewed cases from its sister states, bearing on the issue of whether a certain statute changed the quantum or amount of evidence necessary for conviction, and concluded that the change in the law regarding the admissibility of defendant's refusal did not constitute such a statute. The change merely allowed the jury to consider additional evidence, without making the refusal a necessary or conclusive element of the defendant's guilt. *Id.* at 231–32. Having determined that the change was a procedural one, the court addressed appellant's claim that the change in the law affected a substantial right, namely an individual's right to refuse to submit to a breathalyzer test. But, it ultimately dismissed this claim based on the Supreme Court's opinion in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74

L.Ed.2d 748 (1983), which held that a defendant is not constitutionally protected from the adverse consequences of his refusal.[4]

We are persuaded that the Missouri court's reasoning in *Stevens,* applying the analysis used by the Supreme Court in *Thompson* and *Hopt,* is sound. Accordingly, we hold that the amended statute, as applied retroactively by the circuit court, did not violate the constitutional prohibition against *ex post facto* laws.

### Self incrimination

■ Next, appellant argues that the admission of evidence of his refusal to take the breathalyzer test violates his right against self incrimination as guaranteed by Article 22 of the Maryland Declaration of Rights. Md. Decl. of Rts., art. 22 ("That no man ought to be compelled to give evidence against himself in a criminal case."). As a preliminary issue, the State argues that, because this argument was never presented to the trial court, this Court need not address it. *See* Md. Rule 8–131(a) (2003) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."). We agree with the State, but even if the issue had been properly preserved for appellate review, we would find no violation of appellant's constitutional right against self-incrimination. We shall proceed to address it, albeit in the form of dicta.

Appellant concedes, and we recognize, that the Supreme Court, in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), held that the admission into evidence of a defendant's refusal to submit to a blood-alcohol test does not offend the constitutional right against self incrimination. Appellant argues, however, that this Court need not follow the

---

4. This claim will be discussed in more detail in the subsequent section that addresses appellant's self-incrimination argument.

*Neville* holding because Maryland's constitutional self incrimination provision, Article 22 of the Maryland Declaration of Rights, provides broader protection than the Fifth Amendment. To support this assertion, appellant first points to the difference in language between the Maryland and federal provisions, and then to cases from other states in which those courts "excluded from evidence a defendant's refusal to submit to an alcohol test based on state constitutional grounds." Ultimately, we are not persuaded by appellant's assertion that either ground provides a sound basis for rejecting the Supreme Court's holding in *Neville.*

Appellant's argument suggests that the fact that Maryland's self incrimination provision contains language different from the Fifth Amendment necessarily requires that we apply the state provision more broadly. This argument fails for three reasons. First, Maryland case law suggests that Article 22 is generally *in pari materia* with the Fifth Amendment. *See, e.g., Evans v. State,* 333 Md. 660, 683, 637 A.2d 117 (1994); *Choi v. State,* 316 Md. 529, 535 n. 3, 560 A.2d 1108 (1989); *Lodowski v. State,* 307 Md. 233, 246–47, 513 A.2d 299 (1986); *Brown v. State,* 233 Md., 288, 296, 196 A.2d 614 (1964). More specifically, despite a couple of recognized exceptions to the general rule, within which this issue does not fall, appellant has offered no support for why we should create a new exception for this case. In addition, there is evidence to suggest that Maryland's courts have closely followed the reasoning employed by the Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), upon which the *Neville* case relies. Finally, we find appellant's reasoning to be flawed because other states with constitutional language similar to ours have adopted the *Neville* holding, finding no conflict with their own state constitutions.

Most recently, the Court of Appeals, in *Dua v. Comcast Cable,* 370 Md. 604, 805 A.2d 1061 (2002), discussed what it means for state constitutional provisions to be *in pari materia* with their federal counterparts, stating:

We have often commented that such state constitutional provisions are in pari materia with their federal counter-

> parts or are the equivalent of federal constitutional provisions or generally should be interpreted in the same manner as federal provisions. Nevertheless, we have also emphasized that, simply because a Maryland constitutional provision is in pari materia with a federal one or has a federal counterpart, does not mean that the provision will always be interpreted or applied in the same manner as its federal counterpart. Furthermore, cases interpreting and applying a federal constitutional provision are only persuasive authority with respect to the similar Maryland provision.

*Id.* at 621, 805 A.2d 1061. The Court went on to recognize that Article 22 reflects a perfect example of the principle block-quoted above, pointing out that even though Article 22 is generally *in pari materia* with the Fifth Amendment, there are two specific situations where the privilege has been viewed more broadly. *Id.* at 622, 805 A.2d 1061 (quoting *Choi v. State,* 316 Md. 529, 535 n. 3, 560 A.2d 1108 (1989)). Neither exception has been analogized to the present situation, nor has appellant convinced us that this issue presents an appropriate occasion to create a new exception.

Our conclusion that Article 22 should be interpreted and applied in the same manner that the Supreme Court has done with the Fifth Amendment is further supported by the fact that the Court of Appeals and this Court have unquestioningly followed and applied the Supreme Court's holding in *Schmerber,* which provides much of the basis for the *Neville* decision. *See McAvoy v. State,* 314 Md. 509, 518, 551 A.2d 875 (1989) (recognizing the holdings of *Schmerber* and *Neville* ); *Eagan v. Ayd,* 313 Md. 265, 275, 545 A.2d 55 (1988) (recognizing the holdings of *Schmerber* and *Neville* ); *Andrews v. State,* 291 Md. 622, 436 A.2d 1315 (1981); *State v. Moon,* 291 Md. 463, 436 A.2d 420 (1981); *Morgan v. State,* 79 Md.App. 699, 558 A.2d 1226 (1989); *Brice v. State,* 71 Md.App. 563, 526 A.2d 647 (1987).

Finally, appellant's attempt to persuade us that Maryland's constitutional language requires broader application than the Fifth Amendment relies on its unfounded suggestion that state constitutions with different language are necessarily

interpreted more broadly. For support, appellant cites various cases from other states, claiming that the courts excluded from evidence defendant's refusal to submit to an alcohol test on state constitutional grounds. Most of the cases cited by appellant occurred prior to the Supreme Court's decision in *Neville* and have either been explicitly overruled or their reasoning can not be reconciled with *Schmerber* and/or *Neville*. *See, e.g., State v. Sullivan,* 2 Conn.Cir.Ct. 412, 199 A.2d 709 (1963) (pre-dating *Schmerber* and *Neville,* the court did not explicitly mention the constitutional right against self incrimination); and *Johnson v. State,* 125 Ga.App. 607, 188 S.E.2d 416, 417–18 (1972) (holding that the admission of evidence of defendant's refusal violated his constitutional right against self incrimination), *overruled by Wessels v. State,* 169 Ga.App. 246, 312 S.E.2d 361, 362 (1983) (adopting the *Neville* holding).[5] In addition, we discovered seven cases in which the courts expressly adopted the holding of *Neville* despite the fact that their state constitutions contained the same self incrimination language that appears in Article 22 of the Maryland Declaration of Rights. *See State v. Superior Court,* 149 Ariz. 601, 721 P.2d 149, 150 (1986); *People v. Ahern,* 119 Ill.App.3d 532, 75 Ill.Dec. 31, 456 N.E.2d 852, 856 (1983); *Ricks v. State,* 611 So.2d 212, 215 (Miss.1992); *State v. Hoenscheid,* 374 N.W.2d 128, 129–30 (S.D.1985); *State v. Wright,* 691 S.W.2d 564, 566 (Tenn.Crim.App.1984); *Sandy City v. Larson,* 733 P.2d 137, 138–39 (Utah 1987); and *City of Seattle v. Stalsbroten,* 138 Wash.2d 227, 978 P.2d 1059, 1064 (1999).

---

**5.** Unlike many of the cases cited by appellant, Massachusetts has expressly rejected the Supreme Court's holding in *Neville* based on state constitutional grounds. *See Opinion of the Justices to the Senate,* 412 Mass. 1201, 591 N.E.2d 1073 (1992). Massachusetts' self incrimination provision adds an additional element, providing that no person shall "be compelled to accuse, or furnish evidence against himself." Mass. Decl. of Rts., art. 12. Interpreting its constitutional language more broadly than the Fifth Amendment, the Supreme Judicial Court of Massachusetts concluded that evidence of a refusal to submit to a breathalyzer test is testimonial in nature, and that there is compulsion because both alternatives, refusal or submission, require the suspect to furnish evidence against himself. 591 N.E.2d at 1076–78.

■ Having demonstrated why we do not feel compelled to give Article 22 a broader application than the Fifth Amendment based solely on its different language, we turn to the Supreme Court's reasoning to support our adoption of the *Neville* holding and conclusion that admission of evidence of a defendant's refusal to submit to a breathalyzer test does not violate appellant's Article 22 right against self incrimination. In addition, we point out that the vast majority of courts that have considered the issue have reached the same conclusion. Some courts held that such testimony was admissible and did not violate the constitutional prohibition against self incrimination prior to the Supreme Court's decision in *Neville*. *See People v. Sudduth,* 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401, 403 (1966); *State v. Meints,* 189 Neb. 264, 202 N.W.2d 202, 203–04 (1972); *Westerville v. Cunningham,* 15 Ohio St.2d 121, 239 N.E.2d 40, 42 (1968); *State v. Gardner,* 52 Or.App. 663, 629 P.2d 412, 416 (1981); *State v. Brean,* 136 Vt. 147, 385 A.2d 1085, 1088 (1978). Others have willingly adopted the *Neville* reasoning following the opinion's publication. *See Fillmore v. State,* 668 So.2d 141, 144 (Ala.Crim.App.1995); *Leslie v. State,* 711 P.2d 575, 578 (Alaska App.1986); *State v. Lee,* 184 Ariz. 230, 908 P.2d 44, 48 (1995); *State v. Ferm,* 94 Hawai'i 17, 7 P.3d 193, 205 (2000); *People v. Bugbee,* 201 Ill.App.3d 952, 147 Ill.Dec. 381, 559 N.E.2d 554, 556 (1990).

In *South Dakota v. Neville,* the Supreme Court held that the admission into evidence of a defendant's refusal to submit to a blood-alcohol test does not offend the right against self incrimination. 459 U.S. at 554, 103 S.Ct. 916. The Court began by reviewing South Dakota's drunk driving laws, which contain an "implied consent" law, similar to Maryland's, providing that any person operating a motor vehicle in South Dakota is considered to have consented to a blood-alcohol test if arrested for driving while intoxicated. *Id.* at 559, 103 S.Ct. 916. The Court went on to further examine South Dakota's statutory framework, explaining that it permits a suspect to refuse the test, as long as the police officer informs the suspect of that right, but discourages refusal by making license revocation a penalty and by allowing the refusal to be

used against the defendant at trial. *Id.* at 559–60, 103 S.Ct. 916.

Next, the Court reviewed its decision in *Schmerber,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), in which it held that the Fifth Amendment privilege against self incrimination did not protect an individual from being compelled to submit to a blood test, reasoning that the privilege only bars the State from compelling "communications" or "testimony," and blood tests are physical, or real evidence, rather than testimonial. *Neville,* 459 U.S. at 559, 103 S.Ct. 916 (citing *Schmerber,* 384 U.S. at 762, 86 S.Ct. 1826). Faced with the question of whether South Dakota's statute allowing the refusal to be admissible violated the Fifth Amendment privilege against self incrimination, the Court noted that *Schmerber* had left that question unanswered but had indicated that general Fifth Amendment principles, rather than the specific holding of *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965),[6] would govern the analysis. The distinction between the general principles and *Griffin* was crucial because it emphasized the fact that a suspected drunk driver does not have a constitutional right to refuse to take a blood test. *Id.*

The *Neville* Court then pointed out that "[m]ost courts applying general Fifth Amendment principles to the refusal to take a blood test have found no violation of the privilege against self incrimination," citing *People v. Sudduth,* 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401 (1966), *cert. denied,* 389 U.S. 850, 88 S.Ct. 43, 19 L.Ed.2d 119 (1967) (reasoning that refusal to submit is a physical act rather than a communication), and *People v. Ellis,* 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393 (1966) (explaining that refusal to take a potentially incriminating test is similar to other circumstantial evidence of consciousness of guilt, such as escape). *Neville,* 459 U.S. at 560–61, 103 S.Ct. 916. In addition, the Court acknowledged the minority view, relied on by the lower court, and explained

---

**6.** In *Griffin,* the Supreme Court held that a prosecutor's or trial judge's comments about a defendant's refusal to testify violated the defendant's Fifth Amendment right.

that the courts that followed the minority approach viewed a refusal as a communicative act. *Id.* at 561, 103 S.Ct. 916.

Recognizing the difficulty in drawing a clear line between real/physical evidence and communications or testimony, the Court rested its decision on its conclusion that no impermissible coercion is involved when the suspect refuses to submit to taking the test, and therefore, the individual's Fifth Amendment rights can not be violated. *Id.* at 561–62, 103 S.Ct. 916. For support, the Court pointed to the constitutional language itself, *i.e.,* no person shall "be *compelled* in any criminal case to be a witness against himself," and case law reiterating that the Fifth Amendment only prohibits "the use of 'physical or moral compulsion' exerted on the person asserting the privilege." *Id.* at 562, 103 S.Ct. 916 (quoting *Fisher v. United States,* 425 U.S. 391, 397, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Focusing on the acts involved when a suspect is requested to submit to a test, the Court reasoned that "the values behind the Fifth Amendment are not hindered when the State offers a suspect the choice of submitting to the blood-alcohol test or having the refusal used against him." *Id.* at 563, 103 S.Ct. 916. The Court further reasoned that the choice is in fact a meaningful one because (1) the test is "safe, painless, and commonplace," (2) the State could legitimately compel the suspect against his will, *i.e.,* there is no constitutional right to refuse to take a blood-alcohol test, and (3) the State would rather have the suspect submit to the test than refuse because results from a test provide stronger evidence of guilt than the inference drawn from a refusal. *Id.* at 563–64, 103 S.Ct. 916. Ultimately, the Court held "that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." *Id.* at 564, 103 S.Ct. 916 (footnote omitted).

Finding the reasoning employed by the Supreme Court in *Neville* persuasive, we hold that admission of the evidence of a defendant's refusal to submit to a breathalyzer test does not violate the defendant's right against self incrimination as

guaranteed by Article 22 of the Maryland Declaration of Rights.

## Relevancy and Undue Prejudice

Appellant next argues that evidence of the test refusal should have been excluded because it was not relevant to any issue in the case. Having determined that the amended statute was properly applied in appellant's case, and that the statute does not violate appellant's constitutional right against self incrimination, we accept the legislature's determination of relevancy, evidenced by its enactment of legislation making such evidence admissible, and its removal of the limitation on the inference that the jury may draw from such evidence. Accordingly, we can not say that the court abused its discretion in admitting evidence of appellant's refusal.

In addition, appellant argues that the trial court abused its discretion, pursuant to Maryland Rule 5–403, in failing to exclude the evidence because its probative value is substantially outweighed by the danger of unfair prejudice. Again, we see no basis for concluding that the court abused its discretion.

## Jury Instruction

Finally, appellant claims that the trial court erred in refusing to instruct the jury that no inference or presumption of guilt arises because of a refusal to submit to a breathalyzer test. According to Maryland Rule 4–325, the trial court must, upon the request of any party, instruct the jury regarding the applicable law. *See also Roach v. State,* 358 Md. 418, 427–28, 749 A.2d 787 (2000). Our determination that the amended statute was properly applied to appellant's case means that appellant's requested instruction did not accurately reflect applicable law at the time of the trial. Consequently, the trial court did not err in failing to include appellant's requested instruction.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**